Robert L. BEADIN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 71S00–8704–CR–387.

Supreme Court of Indiana.

Feb. 2, 1989.

J. David Keckley, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Donald B. Kite, Sr., Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant Robert L. Beadin was found guilty by a jury of attempted murder, a class A felony, Ind.Code §§ 35–42–1–1(1), 35–41–5–1 (Burns 1985 Repl.), and armed robbery, a class B felony, Ind.Code § 35–42–5–1 (Burns 1985 Repl.) The trial court sentenced him to thirty-five years in prison for the attempted murder with a concurrent ten-year term for the armed robbery. It later reduced the sentence for attempted murder to thirty years.

On direct appeal, Beadin raises five issues:

I. Whether the trial court erred in denying a continuance;

II. Whether the evidence is sufficient to support the attempted murder conviction;

III. Whether the introduction of a "mug shot" taken on the night of Beadin's arrest prejudiced his right to a fair trial;

IV. Whether the trial court erred in permitting testimony of the other guns in Beadin's house; and

V. Whether Beadin received effective assistance of counsel.

At trial the State showed that Beadin entered a Kentucky Fried Chicken store in South Bend with a sawed-off shotgun. He ordered the assistant manager to remove the money from the cash register and place it in a bag. The assistant manager complied, and Beadin left with the bag of money.

A customer witnessed the armed robbery and called the police. Officer Thomas Baker, who happened to be at the store's drive-through window, saw Beadin's car and began pursuit. The police chased Beadin through the city. The chase ended at Beadin's home.

Beadin jumped out of his car with the shotgun in hand and grabbed his daughter, who was in the car with him. He used his daughter to shield himself so that he could get into the house without the police rushing him. The police surrounded him. Beadin demanded that officer Baker turn off his siren. Officer Baker did so and remained crouched down behind his car, his revolver drawn. Beadin checked where the officers were and then fired a shot wounding Baker in the head.

I. *Continuance*

Beadin argues that the trial court erred in denying a continuance two days before trial. Beadin sought the continuance *pro se* because he felt his public defender was not adequately prepared, and he wanted to retain private counsel. He concedes that the granting of a continuance for this purpose is within the discretion of the trial court.

The Court has already decided this question adverse to Beadin. *Little v. State* (1986), Ind., 501 N.E.2d 447. In *Little*, as in this case, trial counsel said he was prepared to try the case and did not need a continuance. *Id.* at 449. Beadin was free on bond prior to trial. Had he been dissatisfied with the preparation of his public defender he could have hired another attorney at an earlier time. Instead, he sought

a continuance two days before trial. Continuances sought shortly before trial to hire a new attorney are disfavored because they cause a substantial loss of time for jurors, lawyers and the court. *See Roberts v. State* (1986), Ind., 500 N.E.2d 197. The trial court was within its discretion to deny the continuance.

## II. *Sufficiency of the Evidence*

Beadin argues that the evidence is insufficient to support the attempted murder conviction. He testified that the shooting was an accident and that he did not intend to kill Baker. He maintains that his testimony would not allow the jury to exclude every reasonable hypothesis of innocence, citing *Banks v. State* (1971), 257 Ind. 530, 276 N.E.2d 155, and *Manlove v. State* (1968), 250 Ind. 70, 232 N.E.2d 874.

This Court no longer uses the appellate standard outlined in *Banks* and *Manlove*, a standard which required that if the only evidence was circumstantial, that evidence exclude every reasonable hypothesis of innocence. *Biggerstaff v. State* (1982), Ind., 432 N.E.2d 34. We use the same standard of review whether the evidence is direct or circumstantial. That standard requires this Court to look at the evidence most favorable to the verdict, and, without reweighing the evidence or judging the credibility of the witness, decide whether a reasonable person could find the existence of each element of the crime beyond a reasonable doubt. *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

The jury may infer intent to kill from the use of a deadly weapon in a manner likely to cause death. Although the jury could have accepted Beadin's argument that the shooting was an accident, it was not bound to accept his story. *Burgess v. State* (1984), Ind., 461 N.E.2d 1094.

The State presented evidence to rebut Beadin's contention that the shooting was an accident. The shotgun could only be fired by pulling back on the trigger with a force in excess of six pounds. When firing the shotgun, Beadin took the time to level the gun at Baker. Baker testified, "I was looking down a barrel of a shotgun...." The jury had sufficient evidence before it to infer that Beadin intended to kill Baker.

## III. *Admission of "Mug Shot"*

Beadin argues that the trial court erred in admitting a "mug shot" taken on the night of his arrest. He contends the jury could infer from the photograph that Beadin had a prior arrest. Beadin's counsel did not object to the photograph at trial, but Beadin claims on appeal that the error was fundamental.

This Court has traditionally disapproved the use of "mug shots" out of concern that jurors may infer a criminal history from the photographs. *Graves v. State* (1986), Ind., 496 N.E.2d 383. If the circumstances under which the photograph was taken are described to the jury in such a way as to foreclose the inference of prior criminal activity, a trial court can admit the photograph. *Rhinehardt v. State* (1985), Ind., 477 N.E.2d 89 (photograph taken after arrest showing defendant handcuffed to chair in mall security office). The State can also alleviate prejudice resulting from a "mug shot" by disguising the nature of the photograph. *See Ashley v. State* (1986), Ind., 493 N.E.2d 768.

In this case, the trial court permitted the admission of the "mug shot" taken incident to the arrest. The "mug shot" showed Beadin on the day after his apprehension with a tag around his neck that read, "St. Joseph County Police Department, 17360, 03 28 '86." Although it would have been better if the tag around Beadin's neck had been covered, the State adequately informed the jury that the photograph was taken incident to his arrest. The adequacy of this information resulted from the following two steps. First, Beadin's criminal conduct occurred during the evening of March 27, 1986 and the tag indicated that the photograph was taken on "03 28 '86." Second, a police officer testified that the photograph depicted Beadin's appearance and clothing on the night of the crimes. The jury could only infer from this evi-

dence that the "mug shot" resulted from the crime for which he was on trial and not some previous crime. The trial court properly admitted the photograph.

### IV. *Testimony About Other Guns*

Beadin argues that the trial court should not have permitted the prosecutor to question him about the presence of other guns in his home. The evidence, he claims, was not relevant to whether Beadin discharged the weapon with intent to kill.

Evidence is relevant if it has logical tendency to prove or disprove a material fact. *McBride v. State* (1987), Ind., 515 N.E.2d 865. The decision to admit evidence is within the discretion of the trial court. *Fox v. State* (1987), Ind., 506 N.E.2d 1090. This Court will reverse such a decision only when the lower court has abused its discretion.

■ During cross-examination of Beadin, the prosecutor asked, "Did you have any other guns in the home on that evening?" Beadin's counsel objected, and the trial court sustained the objection. The prosecutor then established Beadin's familiarity with guns through a series of questions. He ended this line of questioning by asking, "Did you fire any other double barrel shotgun besides the one you sawed off and that you used?" Beadin answered in the negative. The prosecutor then sought to go back to the other guns because there was another double barrel shotgun in the house. The trial court ruled, "Under the circumstances he has indicated his familiarity with firearms which brings us to the ultimate question if this was an accidental or intentional shooting, and under those circumstances I believe that it can be pursued on cross-examination."

Beadin's counsel did not object to this ruling, but even if he had objected the trial court was within its authority to allow the questions. The testimony tended to rebut Beadin's argument that the shooting was an accident. As such, the trial court was within its discretion in ruling on this evidentiary matter.

1. In addition to these claims, Beadin argues that his attorney failed to object to the admission of the "mug shot" and the photographs of the other

### V. *Effective Assistance of Counsel*

Beadin's lawyer on appeal claims trial counsel did not provide the "affective assistance" [sic] guaranteed by the federal constitution. Specifically, he argues that his trial counsel did not adequately prepare, neglected to object to the testimony of Dr. Robert Yount and Office Keith Zeider, and failed to tender an instruction on a lesser-included offense.[1]

Beadin must present strong and convincing evidence to overcome the presumption that his counsel prepared and executed an effective defense. *Lamb v. State* (1987), Ind., 511 N.E.2d 444. The United States Supreme Court set the standard to judge ineffective assistance of counsel claims in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The analysis has two parts. First, the defendant must show that counsel's performance fell below an objective standard of reasonableness. Second, the defendant must show that the deficient performance prejudiced his defense, depriving him of a fair trial. Unless the defendant proves both parts, the conviction did not result from a breakdown of the adversarial process such that the result is unreliable.

■ *A. Adequate Preparation.* At the hearing on the motion to correct errors, Beadin testified that his attorney spoke with him on five occasions before trial for a total of forty-five minutes. He claimed his attorney failed to determine whether neighbors witnessed the shooting.

Beadin's counsel told the trial court he was prepared to proceed to trial when Beadin sought a continuance *pro se*. The record substantiates that the attorney was familiar with the facts of the case and effective at cross-examining the State's witnesses. He also investigated the shooting. He called two neighbors to bolster Beadin's testimony that the shooting was an accident. The attorney's preparation was reasonable. *See McChristion v. State* (1987), Ind., 511 N.E.2d 297.

guns in the house. Because these exhibits were legally admissible, Beadin's counsel was not ineffective for failing to object to them.

*B. Objection to Testimony.* Beadin argues that his counsel was ineffective for failing to object to the testimony of Dr. Yount and Officer Zeider. Dr. Yount testified that if the shot had hit Officer Baker two inches lower he would have been paralyzed and four inches lower he would have been dead. Officer Zeider said that the sawed-off shotgun Beadin fired had a trigger pull requiring in excess of four pounds. He estimated that the trigger pull was somewhere between six and seven pounds.

For Beadin to prevail on this argument, he must show that the trial court would have sustained an objection to the testimony if one had been made. *Oglesby v. State* (1987), Ind., 515 N.E.2d 1082. Beadin suggests that had his counsel objected to the questions as calling for speculation and opinion testimony, the trial court would have sustained the objection.

 Dr. Yount testified that he was a licensed physician practicing neurosurgery. He completed a five-year residency in neurosurgery, during part of which he handled all neurosurgical cases from the emergency room at Wishard Hospital in Indianapolis. He had treated numerous shotgun wounds to the head and face. This was sufficient foundation for Dr. Yount's testimony about the effect of a shot hitting lower.

Officer Zeider said he had been a firearms training officer for eighteen years. He said a gun can be tested to determine the weight required to fire the gun. Zeider demonstrated by showing that the trigger on his pistol required less than three and a half pounds to fire. He then testified about his experiment with the sawed-off shotgun that Beadin fired. Zeider said that the trigger pull was more than four pounds, the amount of weights he had available. He testified it was a heavy trigger pull, probably between six and seven pounds. In light of Zeider's experience, this evidence was admissible.

In both instances, Beadin failed to establish that the trial court would have sustained an objection if one were made.

*C. Lesser–Included Offense Instruction.* Beadin argues that his counsel was ineffective for neglecting to tender a lesser-included offense instruction on criminal recklessness, Ind.Code § 35–42–2–2. Criminal recklessness is not a lesser-included offense of attempted murder. *Flowers v. State* (1985), Ind., 481 N.E.2d 100. Beadin's counsel could not be ineffective for neglecting to tender such an instruction.

The trial court is affirmed.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.